**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4769
_____

UNITED STATES OF AMERICA

v.

MICHAEL NGUYEN, a/k/a Turtle,
a/k/a Mike, a/k/a M,

                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-04-cr-00767-015)
District Judge: Hon. Paul S. Diamond

_____

Argued June 8, 2015

BEFORE: AMBRO and COWEN,  Circuit Judges
RESTANI,* Judge

(Filed:  July 20, 2015)

_____

* Honorable Jane A. Restani, Judge for the United States Court of International Trade,
sitting by designation.

David E. Fritchey, Esq.
Bernadette A. McKeon, Esq. (Argued)
Robert A. Zauzmer, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      Counsel for Appellee

Cheryl J. Sturm, Esq. (Argued)
387 Ring Road
Chadds Ford, PA 19317

      Counsel for Appellant

_____

OPINION**
_____


COWEN, <u>Circuit Judge</u>.

The petitioner-appellant, Michael Nguyen ("Petitioner"), has appealed the District Court's order denying his petition for habeas corpus pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel in connection with the plea bargaining process. Because we conclude that denial was appropriate, we will affirm.

**I.**

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis. While investigating the Benjamin Ton Drug Trafficking

_____

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Organization, individuals and documents identified Petitioner as a wholesale customer of the organization. In June of 2005, Petitioner was subpoenaed to testify before a grand jury in the Eastern District of Pennsylvania. He was appointed counsel for the limited purpose of representing him in connection with that appearance. On advice of counsel, Petitioner did not testify before the grand jury.

By the end of August of 2005, five of the six defendants charged in the original indictment had entered into cooperation agreements. The sixth defendant entered into a cooperation agreement in September 2005. On September 14, 2005, a superseding indictment was issued, adding numerous charges and twenty new defendants, including Petitioner. On September 29, 2005, at his initial appearance, Petitioner pled not guilty and requested the appointment of counsel. The court appointed John Griffin.

Between September 2005 and August 2006, 21 of the 26 co-defendants charged in the first superseding indictment pled guilty. The grand jury returned a second superseding indictment on August 23, 2006, adding one new defendant and consolidating the charges pending against the remaining five co-defendants, including Petitioner. During this time, Petitioner was represented by Griffin.

Petitioner's Motion to Dismiss His Counsel

On September 8, 2006, Petitioner asked the District Court to terminate Griffin's representation and appoint new counsel due to his attorney's alleged failure to keep him adequately apprised of the status of his case. Petitioner alleged in his motion that September 29, 2005, the date of his arraignment, was the first and last occasion he "met,

3

spoke with or communicated in any form with Mr. Griffin." (App. 312.) The District Court held a hearing on Petitioner's motion to dismiss his counsel, at which Petitioner acknowledged that he had met with Griffin on the Monday before the hearing, but reiterated his frustration with his counsel and asserted that the visit was the first time the two had met since his arraignment. Griffin also testified, but chose not to specifically address Petitioner's complaints. Rather, he simply noted that he had "just recently received discovery," and that he had met with Petitioner to discuss it. (App. 318.) Griffin's brief testimony indicated that when he had spoken to Petitioner a few days earlier, he believed they were ready to move forward, but that if Petitioner wanted new counsel, he would "respect whatever the position the Court wants to make on this." (*Id.*) The District Court advised Petitioner that a change in counsel could delay his trial, but given Petitioner's insistence on new counsel, the District Court granted the motion and subsequently appointed Steven Laver in December 2006 to represent him. Laver represented Petitioner through to completion of his trial.

Petitioner's Trial and Conviction

Petitioner's trial commenced in August 2007. He was ultimately convicted of conspiracy to distribute 100 kilograms or more of marijuana and convicted of possession with intent to distribute 50 pounds of marijuana, 100 pounds of marijuana, and 24 pounds of marijuana. On May 12, 2008, Petitioner was sentenced to a term of 262 months' imprisonment consecutive to the undischarged term of imprisonment. We affirmed that conviction and sentence in an unpublished opinion. On October 16, 2010, Petitioner

4

filed a counseled motion pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel in connection with the plea bargaining process.

### Petitioner's § 2255 Motion

Petitioner's motion raised several grounds of ineffective assistance, including that trial counsel failed to "provide reasonably accurate advice concerning all aspects of the case," including a candid estimate of the probable outcome, the probable outcome of alternative choices, the maximum and minimum sentences that could be imposed, and what sentence was likely. (App. 72.) Although the initial motion did not clearly distinguish between Griffin and Laver, Petitioner has not appealed any of his claims against Laver and those claims are not before us.

The District Court held an evidentiary hearing on Petitioner's motion. In addition to Petitioner's counsel who had been appointed in connection with his grand jury appearance, Petitioner, Griffin, and Assistant United States Attorney David Fritchey all testified.

### The District Court's Denial of the § 2255 Motion

In considering the habeas petition, the District Court "largely discredit[ed] the testimony of [Petitioner]," and credited the testimony of Griffin and Fritchey. (App. 5.) Under the circumstances presented, the Court concluded that Petitioner had not been constructively denied counsel during a critical stage of his proceedings, refused to apply the standard in *United States v. Cronic*, 466 U.S. 648 (1984), and instead analyzed Petitioner's claims under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984).

5

Finding that Petitioner could not meet the latter standard, the District Court denied the petition and declined to issue a certificate of appealability ("COA"). Petitioner appealed, and we granted Petitioner a COA only as to his claim that he was constructively denied the right to be represented by effective counsel during a time when plea negotiations could have taken place.

## II.

Petitioner asserts that Griffin abandoned him during a critical stage of his proceedings and that his case is therefore governed by the standard in *Cronic*. We decline to apply *Cronic* and instead apply the standard announced in *Strickland*.

Application of the *Cronic* Standard

In *United States v. Cronic*, counsel representing the defendant was given only 25 days to prepare for trial even though the Government had taken four and a half years to investigate and had reviewed thousands of documents. The defendant was convicted and the Sixth Circuit reversed, inferring that the defendant's Sixth Amendment right had been violated. *Cronic*, 466 U.S. at 649-52. The Supreme Court disagreed that the inference was warranted in that case, but identified three circumstances where reversal of a conviction under the Sixth Amendment is required "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial." *Bell v. Cone*, 535 U.S. 685, 695 (2002).

As the Supreme Court reiterated in *Bell v. Cone*, the three circumstances are as follows: (1) circumstances involving the complete denial of counsel at a critical stage in

6

the proceedings, (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) where counsel is called upon to render assistance under circumstances where competent counsel very likely could not. *Id.* at 695-96. Here, Petitioner argues that he was effectively denied counsel at a critical stage in his proceedings.

As an initial matter, we conclude that the District Court's findings regarding the adequacy of Griffin's representation were not clearly erroneous. The District Court credited Griffin's testimony, discredited Petitioner's, and we discern nothing in the record that would warrant us substituting our own judgment for either credibility determination. *See Ross v. Varano*, 712 F.3d 784, 796 (3d Cir. 2013) ("applying the clear error standard of review . . . an appellate court ordinarily accepts a district court's credibility determinations." ). Moreover, the District Court found as follows: (1) that Griffin had several discussions with Petitioner early in the representation about pleading guilty, (2) that Petitioner had made it clear to Griffin that he was not interested in entering into any kind of plea agreement or negotiations, (3) that Griffin was certain that Petitioner wanted to go to trial and recalled his refusal to plead guilty, and (4) that, at the time Griffin ended his representation, he had never received any indication that Petitioner wanted to do anything other than go to trial. These factual findings are each supported by the record and Griffin's specific testimony.

Because Griffin's credited testimony establishes that he discussed with Petitioner the possibility of pleading, the advantages that accompany it, and met with him to discuss

7

the Government's discovery when he received it, Petitioner has not demonstrated abandonment such that are we are persuaded to apply *Cronic*. The cases relied on by Petitioner do not convince us otherwise.

In *Appel v Horn*, 250 F.3d 203, 214 (3d Cir. 2001), we applied *Cronic* to a claim of constructive denial of counsel to a state court defendant at his competency hearing. But in *Appel*, despite the fact that the petitioner's counsel had been assigned to represent him by the Public Defender, the petitioner had informed them that he wished to represent himself and did not want them to represent him. Indeed, even after the state trial court denied the petitioner's waiver of counsel, the petitioner's assigned counsel continued to refuse to act as defendant's counsel. The District Court, on habeas review, concluded that despite their obligation to act as counsel at the petitioner's competency hearing, the record was undisputed that they had failed to do so. *Id.* at 215. We agreed. "In short, attorneys Kraft and Crowe, because they did not believe they were counsel, never conducted *any* investigation; did not provide Dr. Schwartz or the court with *any* information about [the petitioner]; and did not attempt to litigate the competency determination in *any* way." *Id.* (all emphases in original). Accordingly, we concluded that there was "ample support for the District Court's conclusion that Kraft and Crowe abandoned their duty to both the court and their client when they decided not to conduct any investigation on [the petitioner's] competency." *Id.* (internal quotation marks and citation omitted). In contrast, no such complete abandonment occurred here.

Nor is Petitioner aided by the Sixth Circuit's decision in *Mitchell v. Mason*, 325

8

F.3d 732, 742 (6th Cir. 2003). In *Mitchell*, the petitioner complained that he had not seen or talked to his lawyer in the five months leading up to trial, and that his counsel was suspended for the month immediately preceding trial. *Id.* at 742. The trial judge postponed a decision on the petitioner's motion until a time when his counsel could appear. Then, on the second day of jury selection, the court revisited the issue of the petitioner's request for new counsel. *Id.* at 735-36. At that time, the petitioner's counsel testified at length, but did not dispute the substance of the petitioner's assertions. The court concluded that *Cronic* applied and that the petitioner had been completely denied counsel at a critical stage. *Id.* at 744.

*Mitchell* is easily distinguished from this case. First and foremost, in *Mitchell*, because his attorney was suspended for the 30 days before his trial, the petitioner was actually completely denied counsel for a period of time prior to his trial. Although the Sixth Circuit noted that this fact "does not decide this case" such that an attorney's suspension would lead to an automatic application of *Cronic*, "it does contribute to the weight of the evidence that demonstrates that there was no consultation between [the petitioner] and his attorney prior to trial." *Id.* at 747. There obviously was no such period of actual non-representation in this case.

Second, in *Mitchell*, the petitioner indicated that following his bail hearing, his attorney had not visited him once in prison and that he had not had the opportunity to speak to him in court until his lawyer next represented him at the final conference four months later. *Id.* at 735. Here, although Petitioner arguably did not speak to his attorney

9

for a longer period of time, Petitioner's case, which was designated complex, appears to have been advancing more slowly. It is not the case that Petitioner saw Griffin at his bail hearing and then did not see or hear from him again until the final pre-trial conference. Rather, Griffin, upon receiving discovery from the Government, met with Petitioner to review it and to again discuss the status of his case.

On the factual record before us, and in light of the District Court's decision to credit Griffin's testimony over Petitioner's, Petitioner has not demonstrated that he was constructively denied counsel during the pre-trial period. As we conclude that *Cronic* does not apply, we turn to an analysis of Petitioner's claims under the *Strickland* standard.

Application of the *Strickland* Standard

*Strickland* requires Petitioner to show the following: (1) that his attorney's representation was unreasonable under "prevailing professional norms," and (2) that but for the deficiency in representation, there was a reasonable probability that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Petitioner cannot meet this standard.

Petitioner cannot establish that he suffered any prejudice as a result of Griffin's alleged ineffectiveness. Because Griffin was replaced by Laver, against whom Petitioner has chosen not to appeal his claim of ineffective assistance, his claim is limited to the argument that he was denied an opportunity to plead or cooperate during the time Griffin represented him as a result of Griffin's ineffective assistance. But to establish prejudice,

10

Petitioner must begin by proving that a plea agreement was formally offered by the Government. *See Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) (holding, in the context of an ineffective assistance of counsel claim, that to establish prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the Government).

Here, however, it is undisputed that while Fritchey testified he spoke to Griffin several times, the Government never made any formal offer. Moreover, even if Petitioner could demonstrate that the Government offered a plea bargain or a cooperation agreement – which of course he cannot – there is insufficient evidence that Petitioner would have taken it. Griffin testified, credibly according to the District Court, that Petitioner was resolute in his opposition to accepting any kind of offer. And Fritchey testified that Laver informed him that Petitioner "thought he had a defensible case, and he wanted to go to trial." (App. 278.) On this record, Petitioner's speculation that had he known the potential prison sentence he faced, he would have accepted a guilty plea or cooperation deal – offers that were never made and therefore never his to accept – is simply insufficient to establish prejudice under *Strickland*.

### III.

In light of the foregoing, the order of the District Court entered on November 5, 2013, will be affirmed.