IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EVERETT URQUHART, | § | |
| | § | No. 16, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1407012946 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 14, 2018
Decided: January 24, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon Appeal from the Superior Court of the State of Delaware: **REVERSED** and **REMANDED**.

Eugene J. Maurer, Jr., Esquire and Elise K. Wolpert, Esquire, (*argued*), Eugene J. Maurer, Jr. P.A., Wilmington, Delaware, for Appellant, Everett Urquhart.

Abby Adams, Esquire, Department of Justice, Georgetown, Delaware, for Appellee, State of Delaware.

**SEITZ**, Justice, for the Majority:

A New Castle County grand jury indicted Everett Urquhart for the armed robbery of a corner grocery store in Wilmington. Urquhart was poor and needed a public defender. In the five months before trial, three different public defenders represented Urquhart at preliminary court hearings. A fourth public defender would be his trial counsel, assigned to defend Urquhart against charges carrying a lengthy minimum prison sentence.

Because of a trial the preceding week, and other professional commitments before that, Urquhart's trial counsel did not meet with Urquhart to prepare for trial. The morning of trial was also the first time trial counsel showed Urquhart the State's key evidence against him. Before jury selection, Urquhart expressed frustration and confusion to the court about seeing his trial counsel for essentially the first time the morning of trial and seeing the State's evidence against him. Trial went ahead, and a Superior Court jury convicted Urquhart of all charges. The judge sentenced him to fifteen years in prison. We affirmed the convictions on direct appeal.[1]

Urquhart moved for post-conviction relief, and claimed that his trial counsel's absence before trial denied him his Sixth Amendment right to the assistance of counsel. The Superior Court denied the motion. The question is now before us— whether a defendant's Sixth Amendment right to the assistance of counsel in a serious felony trial requires more than the mere presence of a defense attorney the

---

[1] *Urquhart v. State*, 133 A.3d 981, 2016 WL 768268 (Del. Feb. 26, 2016) (TABLE).

day of trial. We find that it does, and reverse Urquhart's conviction and remand for a new trial.

## I.

On July 15, 2014 a masked man wearing a black hooded North Face jacket robbed a corner store in Wilmington. A security camera captured the robbery. A witness told police she saw someone flee the area in a four-door green sedan and gave police the license plate number. The car belonged to Caree Matsen, who told police she loaned the car to her sister's boyfriend, Urquhart. The police found Urquhart's belongings in Matsen's sister's bedroom, and found cell phone photos of him wearing a black hooded North Face jacket. Police arrested Urquhart on July 18, 2014.

The State charged Urquhart with first degree robbery, possession of a firearm during the commission of a felony, wearing a disguise during the commission of a felony, first degree reckless endangering, and possession of a firearm by a person prohibited. Urquhart could not afford a private attorney, and was assigned a public defender. Before his arraignment, Urquhart had the following contacts with defense counsel:[2]

- July 28, 2014: A public defender represented Urquhart at the preliminary hearing.[3]

---

[2] The record is unclear which attorneys contacted Urquhart between August 14th and September 30th.

[3] App. to Opening Br. at A53 (Pet'r's Am. Mot. for Post-Conviction Relief, *Urquhart v. State*, No. 1407012946, at 5 (Del. Super. July 10, 2017)).

- July 31: Trial counsel sent Urquhart a letter of representation explaining the trial process.[4]

- August 14: A public defender, possibly trial counsel, met with Urquhart and might have reviewed the probable cause affidavit with hm.[5]

- August 27: Urquhart called trial counsel and discussed filing a motion to dismiss the indictment.[6]

- September 2: A public defender sent Urquhart a copy of discovery from the State.[7]

- September 30: A public defender sent Urquhart the case scheduling order.[8]

- October 20: A public defender represented Urquhart at the first case review, when he was arraigned.[9]

After arraignment and leading up to trial, Urquhart had the following contacts with defense counsel:

---

[4] *Id.* at A81 (Trial Counsel Aff., *Urquhart*, No. 1407012946, ¶ 2 (Del. Super. Aug. 31, 2017)).

[5] *Id.* (Trial Counsel Aff. ¶ 3). Trial counsel told the court that he met with Urquhart "back in July." *Id.* at A140 (Trial Tr., *Urquhart*, No. 1407012946, at 20 (Del. Super. Feb. 3, 2015)). An e-mail addressed to trial counsel, however, suggests that there were no prison visits between Urquhart's arrest on July 18, 2014 and the final case review on January 26, 2015. *Id.* at A100 (E-mail Jan. 26, 2015). It appears that the only time trial counsel could have met with Urquhart, according to the trial transcript and the e-mail, is the date of Urquhart's arrest, July 18, 2014. This date is not referenced in trial counsel's affidavit.

[6] App. to Opening Br. at A81 (Trial Counsel Aff., ¶ 5); *Id.* at A100 (E-mail).

[7] *Id.* at A82 (Trial Counsel Aff. ¶ 6).

[8] *Id.* at A81 (¶ 4).

[9] *Id.* at A82 (¶ 12); *Id.* at A100 (E-mail).

4

- November 10: Trial counsel spoke with him by phone to explain that he was busy with another trial, and that "discovery is still forth coming" and he would "send it as [he] receive[d] it."[10]

- November 14: Trial counsel sent him a second copy of the State's earlier discovery responses. These were the same responses sent to Urquhart on September 2.[11]

- January 26, 2015: A different public defender represented Urquhart at the final case review.[12]

Trial counsel's supervisor represented Urquhart at his final case review. At the review, the State offered Urquhart a plea with "a minimum of 15 years of prison."[13] Urquhart had not seen the State's evidence against him, and rejected the plea offer. In an e-mail after the review, trial counsel's supervisor warned trial counsel that Urquhart had received "[n]o video or prison visit since his July 18, 2014 arrest"[14] and "[a]s soon as you can, I would suggest you turn your attention to this case to determine what you need to be prepared for trial."[15]

---

[10] *Id.* at A82 (Trial Counsel Aff., ¶ 6). It is unclear if trial counsel was forgetting this event when he stated to the court that trial counsel did not contact Urquhart between the arraignment and trial. *See id.* at A144 (Trial Tr., at 24).

[11] The second copy was just that—a duplicate of the first copy, with no additional material. Neither the first nor the second copy of discovery contained the video surveillance footage or the cell phone download. *See id.* at A100 (E-mail).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* The e-mail also informs trial counsel that the evidence included "video surveillance of the crime [and] a cell phone dump—neither of which appears to have made it to your file." *Id.* Trial counsel had received the video and cell phone photos five days earlier. *Id.* at A97 (Letter from Brian J. Robertson, Deputy Attorney Gen. to Trial Counsel, Pub. Def., Jan. 21, 2015). Trial counsel sent the supplemental discovery responses to Urquhart two days after the final case review. *Id.* at A81–A82 (Trial Counsel Aff., ¶ 9). Trial counsel should have requested the surveillance

Urquhart was evidently frustrated with his lack of contact with trial counsel and the progression of his case. On November 5, 2014, Urquhart filed a *pro se* motion to compel discovery materials.[16] Additionally, his only two-way contact with trial counsel were calls he initiated.[17] The week before trial, Urquhart's trial counsel sent him the State's supplemental discovery responses which contained the surveillance footage and photos. Given prison mail delays, Urquhart did not receive the evidence until his trial counsel brought copies for Urquhart the morning of trial.[18]

Despite his supervisor's warning to get on top of the case, trial counsel did not speak to or meet with Urquhart until February 3, 2015—the morning of trial. Trial counsel showed Urquhart the State's surveillance footage and photographs.[19] The State also offered Urquhart a five-year plea deal.[20] Urquhart turned it down.[21] Before jury selection, Urquhart addressed the court, expressing his frustration with his current situation:

---

footage earlier, because it was mentioned at Urquhart's preliminary hearing. *Id.* at A109–A10 (Prelim. Hr'g Tr., *Urquhart*, No. 1407012946, at 8–9 (Del. Super. July 28, 2014)).

[16] *Id.* at A2 (Super. Ct. Docket, *Urquhart*, No. 1407012946. at 2).

[17] *Id.* at A100 (E-mail).

[18] *See State v. Urquhart*, No. 1407012946, Memo. Op. at 5 (Del. Super. Dec. 7, 2017) (hereinafter "Memo. Op."); App. to Opening Br. at A82 (Trial Counsel Aff., ¶ 10). His trial counsel received the supplemental discovery one week earlier, on January 21, 2015.

[19] There were two DVDs with images from the surveillance videos and two CDRs with sixty-four images from surveillance and cell phones. *Id.* at A97 (Robertson Letter, ¶¶ 4–8). The State acknowledged that Urquhart would likely not have been able to see the video, just the still photos. *Urquhart v. State* Oral Argument, Delaware Supreme Court (Nov. 14, 2018), https://livestream.com/accounts/5969852/events/8448562/videos/183565127 at 32:30.

[20] App. to Opening Br. at A82 (Trial Counsel Aff., ¶ 10).

[21] *Id.*

6

**Mr. Urquhart**: I just don't understand a lot of things right now. It's too much at once. Like, I'm just hearing stuff for the first time today, and I don't—I don't even know what's coming on. I'm thinking they coming to trial, they do have this, they don't have this, and all this stuff is coming out of nowhere. . . . I want to find out about this, what's going on. I just want some help. I just need somebody to let me know something, what's going on. I never—nothing. All I know is this, Your Honor: A plea. That's all I keep hearing. Plea this, plea that.

**The Court**: I am not suggesting you take your plea. I just want to make sure that you understand that you were extended an offer and you decided to reject it. I don't care whether you plea or not.[22]

He next asked to address the court about the evidence trial counsel showed

him that morning—the video surveillance and cell phone photos:

**Mr. Urquhart**: Your Honor, I just want to know if somebody want to come to me and show me all the evidence that they want to pop up with tomorrow, next week, or whatever is going on, because every couple of seconds, or every other day, I'm getting stuff late. I don't know what's going on. I don't know why. I just came here today, I'm seeing pictures for the first time. I'm seeing a lot of stuff for the first time. I don't know nothing about that stuff.

**The Court**: What are you seeing for the first time, sir?

**Mr. Urquhart**: Pictures. And also out of a cell phone that's not even mine—I don't even know what's going on. . . . And, also, it just—it just—a lot of things that just—I don't understand it. I don't, at all. I don't know what's going on.

**The Court**: All right.

**Mr. Urquhart**: I came here today. I just want justice. I just want some help. I decided not to [plea]. I just want some help. I don't know what is going on.

---

[22] *Id.* at A130–31 (Trial Tr., at 10–11).

**The Court**: Are you telling me that you are dissatisfied with your representation?

**Mr. Urquhart**: I'm not saying—like, I'm not saying I'm dissatisfied. . . . I come here today. Now it's just like—it's throwing me for a loop.

**The Court**: Have you met with [trial counsel] before today?

**Trial Counsel**: No, Your Honor. And I can explain why, Your Honor. I met with him back in July, and then I started a trial, a capital murder trial, that lasted from September to mid-December. At his first case review the case was covered by [another defense attorney]. The second case review, final case review, I was actually in another trial that did not end until Thursday of last week . . . .

**The Court**: [trial counsel], I can understand your schedule.

**Trial Counsel**: We met today. I showed him the pictures. The pictures—I received a package from the State dated January 21st. It would have come while I was in the trial. I was not able to send it to him until the 28th, that's when my secretary was able to send it out. But he has not received them.[23]

. . .

**The Court**: Your client has not seen these [pictures] until today?

**Trial Counsel**: He saw them this morning, Your Honor.

**The Court**: I gather because of your schedule, [Trial Counsel], you haven't had a chance to meet with your client?

**Trial Counsel**: Your Honor—

**The Court**: Personally before today.

**Trial Counsel**: Before today; no, Your Honor, I have not.

---

[23] *Id.* at A137–40 (Trial Tr., at 17–20).

**The Court**: Have you been able to communicate with him by telephone?

**Trial Counsel**: He has written me letters, and I have not been able—in response to a letter I did send it out, but he hadn't received the information that I—

**The Court**: Well, I can understand the schedule that you have, so don't feel that you are personally at issue here.

**Trial Counsel**: I understand that, Your Honor.

**The Court**: But has he heard from you before today?

**Trial Counsel**: No, he has not had an opportunity. I went from one trial into another trial into another trial.[24]

. . .

**The Court**: I think—I take it, frankly, the defendant to be asking me *pro se* for a continuance? Is that correct, sir? Stand up, sir. Do you want a delay in your trial so that you can go over this stuff; is that what you are asking for?

**Mr. Urquhart**: I just wanted to know, like, how this stuff—how is this stuff, like, allowed in? I just don't understand it.

**The Court**: Mr. Urquhart, what I am asking you is are you asking me to delay the trial?

**Mr. Urquhart**: No, sir.

**The Court**: Then [trial counsel] can explain to you how this stuff is coming in, if it comes in. I don't know if it is coming in. I haven't ruled on it yet.[25]

. . .

---

[24] *Id.* at A143–44 (Trial Tr., at 23–24).
[25] *Id.* at A144–45 (Trial Tr., at 24–25).

**Mr. Urquhart**: I don't understand nothing what's going on. I'm asking for help.[26]

Instead of trial counsel speaking up and asking for a continuance, the court put the onus on Urquhart to request a delay. Urquhart declined, and trial proceeded that day. After a three-day trial, the jury convicted Urquhart of all charges, and the court sentenced him to forty-three years at Level V incarceration, suspended after fifteen years, followed by decreasing levels of supervision. He appealed on June 8, 2015, and this Court affirmed his convictions.[27] The Superior Court eventually appointed new counsel to represent Urquhart in post-conviction proceedings.

Urquhart claimed in his postconviction motion that trial counsel's failure to meet with him and prepare for trial deprived him of his Sixth Amendment right to the assistance of counsel. The claim was not, however, stated as a typical ineffective assistance of counsel claim under the United States Supreme Court case *Strickland v. Washington*,[28] where a defendant must prove both counsel's ineffectiveness and prejudice. Instead, Urquhart relied on a United States Supreme Court case decided the same day as *Strickland—United States v. Cronic*.[29] In *Cronic*, the Supreme Court recognized that, when the accused is completely denied counsel at a critical stage of the judicial proceedings, the accused is excused from demonstrating

---

[26] *Id.* at A146 (Trial Tr., at 26).
[27] *Urquhart v. State*, 133 A.3d 981, 2016 WL 768268 (Del. Feb. 26, 2016) (TABLE).
[28] 467 U.S. 1267 (1984).
[29] 466 U.S. 648 (1984).

prejudice under *Strickland*.  Urquhart argued that he was excused from demonstrating prejudice because trial counsel failed to represent him in the critical pretrial stage of the proceedings.

The Superior Court agreed with the State that the Supreme Court's *Cronic* decision required that Urquhart's counsel be "completely absent" from representation to forgo *Strickland's* prejudice requirement.  Because trial counsel supposedly met with Urquhart once, spoke on the telephone with him twice, and sent him five letters before trial, the Superior Court found that trial counsel was not completely absent during the pretrial proceedings.[30]  Thus, Urquhart could only pursue an ineffectiveness claim under *Strickland*, which required a showing of prejudice.  Because Urquhart did not argue prejudice, the Superior Court denied postconviction relief.[31]

**II**.

This Court reviews the denial of a motion for postconviction relief for an abuse of discretion.[32]  Legal and constitutional questions are reviewed *de novo*.[33]

---

[30] Memo. Op., at 9–10.

[31] Urquhart also argued that his counsel was ineffective for failing to investigate two potential witnesses.  The court rejected this argument, finding that counsel made a strategic choice that was "well within the range of professionally reasonable judgments." *Id.* at 12.  Urquhart did not appeal this aspect of the Superior Court's decision.

[32] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[33] *Ploof v. State*, 75 A.3d 840, 851 (Del. 2013).

11

## A.

With any appeal from a motion denying postconviction relief, we first address whether Urquhart's motion is timely and meets the requirements of Superior Court Criminal Rule 61.[34] This is Urquhart's first motion for postconviction relief. It was filed within one year after conviction. Further, a Sixth Amendment claim arguing ineffective assistance of counsel cannot be raised on direct appeal and thus his motion is not repetitive or procedurally defaulted.[35] Urquhart's claims are not barred or procedurally defaulted under Rule 61.

## B.

As another preliminary matter, we address the State's argument that Urquhart waived his ineffective assistance of counsel claims by stating the morning of trial he was not dissatisfied with his trial counsel and declined, in the Superior Court's words, a "*pro se*" continuance.[36] According to the State, "Urquhart could have obtained a continuance and gone over any evidentiary questions with his attorney, and taken more time to prepare his defense, but he declined."[37] Thus, he

---

[34] We apply the version of Rule 61 in effect at the time the motion is filed. *Bradley v. State*, 135 A.3d 748, 757 (Del. 2016). Urquhart filed this motion for postconviction relief in 2016, at which time the 2015 version of Rule 61 was in effect.

[35] *Preston v. State*, 306 A.2d 712, 715–16 (Del. 1973) ("[T]he issue of the effectiveness and competency of defense counsel may not be raised for the first time on direct appeal from a conviction . . . .").

[36] *Id.* at A144–45 (Trial Tr., at 24–25).

[37] Answering Br. at 11. The State also suggests that Urquhart turned down the continuance because he suspected one witness would not show up. But Urquhart had heard the State explicitly state that the witness was present and available to testify immediately before this. App. to Opening Br. at A126 (Trial Tr., at 6).

"affirmatively waived any claim regarding trial counsel's pretrial performance and alleged lack of communication."[38]

An accused's waiver of his Sixth Amendment right to effective counsel must be knowing, intelligent, and voluntary.[39] Here, Urquhart was in a state of confusion when the trial judge addressed him about a continuance. He expressed a lack of understanding of his predicament and requested help over ten times.[40] When first asked whether he wanted the continuance, Urquhart's answer was to ask for clarification about the State's evidence he had seen for the first time. Neither the judge nor Urquhart's trial counsel responded to his question—the judge merely rephrased the question, stating "Mr. Urquhart, what I am asking you is are you asking me to delay the trial?"[41] It was then that his trial counsel should have spoken up to address Urquhart's confusion or request a continuance on his behalf. Instead, Urquhart's trial counsel focused solely on explaining to the judge his reasons for failing to meet with Urquhart. The judge stated that he understood counsel's caseload, telling him not to feel that he was "personally at issue."[42]

---

[38] Answering Br. at 10.

[39] *Morrison v. State*, 135 A.3d 69, 76 (Del. 2016) (requiring any waiver of the right to counsel to be knowing, intelligent, and voluntary).

[40] At the time of the first plea negotiations, Urquhart had not seen the most incriminating evidence against him—the surveillance video and the photos—and thus arguably could not have appreciated the value of a plea deal. And at the time of the second plea discussion on the morning of the trial, Urquhart had just seen the photos for the first time because trial counsel had brought them to the courthouse, and could not view the video evidence.

[41] *Id.* at A145 (Trial Tr., at 25).

[42] *Id.* at A144 (Trial Tr., at 24).

While Urquhart's trial counsel was not responsible for his caseload, it did cause trial counsel not to meet with his client to prepare for trial and should have led him to pause and ask the court for a continuance.[43] As we explained in *Harden v. State*, while "the heavy caseloads that too many of our defense counsel carry may impel them to push ahead without reflecting on the need for more time" this does not negate counsel's responsibility "to take the time necessary to develop a reasoned approach to [trial] with the client's input."[44] Viewed in the context of Urquhart's overall response to the court's questions—repeated requests for help and clarification—and trial counsel's failure to speak up and request a continuance for the benefit of his client, we find that Urquhart did not knowingly and intelligently waive his right to later appeal his trial counsel's failure to provide effective assistance of counsel.

## III.

We now reach the heart of this appeal—whether trial counsel's failure to meet with his client and prepare for trial violated Urquhart's Sixth Amendment right to the effective assistance of counsel in his criminal trial. On appeal, Urquhart and the State essentially reiterate the arguments made in the Superior Court—for Urquhart,

---

[43] *See Commonwealth v. Brooks*, 839 A.2d 245, 250 (Pa. 2003) ("[A] busy schedule simply cannot serve as a reasonable basis for failing to have personal contact with a client prior to that client's trial.").

[44] 180 A.3d 1037, 1049 (Del. 2018).

trial counsel's complete absence from the critical pretrial stage of the criminal proceedings was indisputably ineffective, and under *Cronic* prejudice need not be shown—and for the State, that counsel was not "completely absent" pretrial, his claim fell under *Strickland* and not *Cronic*, and thus Urquhart was not excused from demonstrating prejudice.

A.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right … to have the Assistance of Counsel for his defence." The accused's right to counsel "is a fundamental component of our criminal justice system."[45] "'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'"[46] Because the right has such special value, "[i]t has long been recognized that the right to counsel is the right to effective assistance of counsel."[47] "If no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated."[48]

In *Bell v. Cone*,[49] the United States Supreme Court explained the interplay between its two seminal Sixth Amendment cases—*Strickland v. Washington* and

---

[45] *United States v. Cronic*, 466 U.S. 648, 653 (1984).
[46] *Id*., *quoting* Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 8 (1956).
[47] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).
[48] *Cronic*, 466 U.S. at 654.
[49] 535 U.S 685 (2002).

*United States v. Cronic*.[50]  The difference between *Strickland* and *Cronic* is not one "of degree but of kind."[51]  In *Strickland*, the Court "announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently in his or her representation of a defendant that the defendant's sentence or conviction should be reversed."[52]  The defendant must prove that "counsel's 'representation fell below an objective standard of reasonableness'" and second that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different….'"[53]

In *Cronic*, the Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"[54]  The first, and, according to the Court, "most obvious" is the complete denial of counsel at "a critical stage,"[55] meaning "a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused."[56]  A "critical stage" includes the pretrial

---

[50] *See also Jackson v. State*, 21 A.3d 27, 40 (Del. 2011) ("Two United States Supreme Court cases, espousing divergent rules for divergent circumstances, embody the law of ineffective assistance claims.").

[51] *Bell,* 535 U.S. at 697.

[52] *Id*. at 695.

[53] *Id*., *quoting Strickland*, 466 U.S. at 688.

[54] *Id*., *quoting Cronic*, 466 U.S. at 658-59.

[55] *Id.*, *quoting Cronic*, 466 U.S. at 659 (internal quotation marks omitted).

[56] *Id.* at 696.

process.[57] Next, the presumption is warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[58] And finally, the *Cronic* presumption should be applied when "counsel is called upon to render assistance under circumstances where competent counsel very likely could not…."[59] When any of these three situations occur, the likelihood of prejudice is so high that "the defendant need not show that the proceedings were affected."[60]

---

[57] *Deputy v. State*, 500 A.2d 581, 591 n.13 (Del. 1985) (citing *Powell v. Alabama*, 287 U.S. 45, 54 (1932)) ("The Supreme Court has stated that the presence of counsel at critical pretrial stages is often as important, if not more so, than the presence of counsel at trial."). *See also Gerstein v. Pugh*, 420 U.S. 103, 122 (1975) ("The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel."); *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003) ("[T]he pre-trial period is indeed a critical stage, the denial of counsel during which supports a *Cronic* analysis."); *see id.* at 744 n.5 ("[T]he Supreme Court has considered the pre-trial period to be a critical stage of the proceedings since at least 1932, when it handed down *Powell*.").

[58] *Cronic*, 466 U.S. at 659.

[59] *Bell*, 535 U.S. at 696.

[60] *Id.* This Court has recently discussed *Cronic* claims. *See*, *e.g.*, *Sahin v. State*, 72 A.3d 111, 114-15 (Del. 2013) (finding *Cronic* was not the proper test where defense counsel suggested to the court his client was lying); *Jackson v. State*, 21 A.3d 27, 41 (Del. 2011) (finding the defendant was not completely denied counsel when he was represented "at all times during the trial, the appeal, and the post-trial proceedings"); *Cooke v. State*, 977 A.2d 803, 850 (Del. 2009) (finding prejudice was presumed when counsel proceeded with a guilty but mentally ill defense completely against the defendant's wishes to present a defense of factual innocence, which "failed to subject the prosecution's case to meaningful adversarial testing" under *Cronic*). In the Superior Court, in *Pringle v. State*, 2011 WL 6000834 Del. Super. Nov. 17, 2011), *aff'd on other grounds*, 2011 WL 1087633 (Del. Mar. 13, 2013), the court found a defendant was not completely denied counsel when the trial court granted his *pro se* motion to withdraw his guilty plea without giving him the opportunity to consult with his counsel. The court explained that the defendant "had more than ample opportunity to discuss his case with defense counsel" up until the sentencing hearing—and his counsel "made it clear that he recommended to [the defendant] that he take the plea." *Pringle*, 2011 WL 6000834, at *7. *Pringle* is distinguishable, however, because unlike the defendant in *Pringle*, Urquhart did not have "ample opportunity" to discuss his case with his trial counsel nor see the key evidence against him until the morning of trial.

B.

Urquhart claims that his case falls under the first *Cronic* exception—that he was completely denied counsel at the critical pretrial phase. A complete denial of counsel occurs "when a criminal defendant must navigate a critical stage of the proceedings against him without the aid of 'an attorney dedicated to the protection of his client's rights under our adversarial system of justice.'"[61] But, "bad lawyering, regardless of *how* bad, does not support the [*Cronic*] presumption."[62] Under *Cronic* the question is not whether Urquhart's trial counsel was inadequate, but whether the inadequacy rose to a *complete* denial of representation.

The Superior Court held that Urquhart was not completely denied counsel under *Cronic* because he was represented at the preliminary hearing, arraignment, and both case reviews; and he received two phone calls and four letters.[63] Urquhart correctly points out, however, that all but two of these occurrences took place before

---

[61] *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997) (citing *U.S. v. Swanson*, 943 F.2d 1070, 1075 (9th Cir. 1991)); *see Cronic*, 466 U.S. at 655 n.11 (explaining a complete denial of counsel occurs when "the performance of counsel [is] so inadequate that, in effect, no assistance of counsel is provided" (quoting *United States v. Decoster*, 624 F.2d 196, 219 (D.C. Cir. 1976))).

[62] *Sullivan v. State*, 1998 WL 231264, at *22 (D. Del. Apr. 30, 1998), *aff'd sub nom. Sullivan v. Snyder*, 187 F.3d 626 (3d Cir. 1999) (quoting *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990)); *see also Scarpa v. Dubois*, 38 F.3d 1, 15 (1st Cir. 1994) ("Put bluntly, [when counsel's] errors are more an example of maladroit performance than of non-performance, *Strickland* necessitates an inquiry into the existence of actual prejudice."); *Childress*, 103 F.3d at 1229 ("In essence, we have consistently distinguished shoddy representation from no defense at all.").

[63] Memo. Op., at 1. Urquhart only received three distinct letters: the "fourth letter" (dated Nov. 14, 2014) sent "another copy" of the trial counsel's discovery that was previously enclosed in the "third letter" (dated Sept. 2, 2014). App. to Opening Br. at A82 (Trial Counsel Aff., ¶ 8). Urquhart never received the fifth letter. Memo. Op. at 5.

arraignment. The United States Supreme Court has emphasized that "the most critical period of the proceedings" is "the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important."[64] Although different counsel represented Urquhart at court appearances before trial, for the nearly four months between arraignment and trial, Urquhart received what appears to be one non-substantive phone call and one transmittal letter from trial counsel.[65] Trial counsel's notes summarized the phone call: "Spoke to client. Explained that I was in a trial. That discovery is still forth coming and that I would send it as I received it."[66]

This entry, trial counsel explained, was "an indication to trial counsel that [he] pulled and reviewed discovery with the client."[67] Even if the entry indicated that he reviewed discovery with Urquhart, trial counsel had not received the photos or surveillance footage, and, as Urquhart points out, "[w]ithout that evidence, . . . review of the discovery was inconsequential and did not provide [him] with an opportunity to appreciate the evidence against him."[68] As for the November 14 letter, it contained a copy of the discovery trial counsel received from the State that

---

[64] *Powell*, 287 U.S. at 57.
[65] Opening Br. at 14–15.
[66] App. to Opening Br. at A82 (Trial Counsel Aff., ¶ 7). This call presumably only occurred because Urquhart had filed a *pro se* motion to compel discovery which was then referred to trial counsel by the court.
[67] *Id.*
[68] Opening Br. at 15.

19

had already been sent to Urquhart on September 2.[69]  This second copy still lacked the photos and surveillance footage—more than three months after the State had revealed their existence at the preliminary hearing.[70]  The grim reality is, in the critical pretrial phase when trial counsel must meet with his client to review the evidence, develop strategy, and prepare for trial, that did not occur.  Trial counsel admitted as much when asked by the judge.[71]

We would not be the first court to find a complete denial of counsel under *Cronic* in the pretrial phase when counsel was absent before trial and did not meet with his client to prepare for trial.  In *Mitchell v. Mason*, the Sixth Circuit found the defendant was completely denied counsel during the critical pretrial phase, when "counsel was suspended from the practice of law for the month immediately preceding trial, . . . met with [the defendant] for no more than six minutes over the seven-month period before trial, . . . and the trial court repeatedly ignored [the

---

[69] App. to Opening Br. at A82 (Trial Counsel Aff., ¶ 8) ("Enclosed please find another copy of your discovery dated September 2, 2014.").

[70] *Id.* at A109–10 (Prelim. Hr'g Tr., at 8–9).  It should be noted that trial counsel was not at the preliminary hearing.

[71] *Id.* at A139 (Trial Tr., at 19) (In response to the court asking "have you met with [trial counsel] before today?" trial counsel responded "[n]o, Your Honor").  *See also Weathers v. State*, 149 A.3d 1194, 1209 (Md. Ct. Spec. App. 2016) ("[Defendant's counsel] conceded that he had not yet discussed the surveillance video with appellant.  Indisputably, the video was a key piece of the evidence against appellant.  Contrary to any suggestion otherwise, we question whether defense counsel could truly be prepared when he or she did not discuss the primary evidence in the case with the client prior to the commencement of trial.  We would be presented with a much different case had the court simply granted a brief postponement, or perhaps simply continued the case until the next day, so that these communications could take place.").

20

defendant's] entreaties for counsel who would properly prepare a defense."[72]  The

court focused on counsel's duty to investigate, explaining there was no way to

discharge the duty if he failed to consult with his client.  The court concluded that,

in these circumstances, "no effort to consult with the client was made," and thus the

defendant was completely denied his Sixth Amendment right to the assistance of

counsel during a critical pretrial stage of the proceedings.[73]

The facts here are similar.  While Urquhart's counsel was not suspended from

the practice of law, he "went from one trial into another trial into another trial" over

Urquhart's entire pretrial period—requiring different public defenders to represent

Urquhart in his place at the pretrial hearings, including the final case review.[74]  In

addition, while counsel in *Mitchell* met with the defendant for no more than six

minutes, Urquhart's counsel did not meet with him for almost four months before

trial.  Lastly, and most significantly, Urquhart's repeated requests for help were

effectively pushed aside by his trial counsel and the court.  Thus, following *Mitchell*

would lead to the conclusion that Urquhart was completely denied counsel under

*Cronic*.[75]

---

[72] 325 F.3d 732, 742 (6th Cir. 2003).
[73] *Id.* at 744.
[74] App. to Opening Br. at A144 (Trial Tr., at 24).
[75] In *Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir. 2001), the Sixth Circuit Court of Appeals found that forcing trial to proceed without allowing counsel more time to prepare amounted to a complete denial of representation.  The court found there was "no indication that [the defendant] consulted with his lawyer *even once* before the start of voir dire."  *Id.* at 583.  In addition, "counsel was not

21

We recognize that the line between a *Strickland* violation and a *Cronic* violation is not always easy to draw. Other courts have given *Cronic* a limited reading, making a distinction between an actual complete denial of counsel and a constructive complete denial—the situation in *Mitchell*.[76] The Superior Court took the conservative tack, and held that the mere presence of counsel satisfied *Cronic*, regardless of the degree of counsel's effectiveness.

This appeal has elements of both a *Cronic* and a *Strickland* violation, and leads us to the conclusion that the Sixth Amendment demands more than the presence the morning of trial of a warm body with a law degree. No one seriously argues that trial counsel's failure to meet in advance of trial with a client facing a serious felony charge with lengthy minimum mandatory jail time was effective. Under the stark facts in this appeal—no advance discussion with Urquhart of trial strategy, what witnesses to call, how to respond to the State's evidence, whether the defendant should testify, and no sober conversation with counsel outside the distractions of the morning of trial whether to enter into plea negotiations and accept a plea—the

---

even afforded ten minutes to confer with [the defendant] to discuss the possibility of entering into a plea agreement." *Id.*

[76] *See, e.g., U.S. v. Nguyen*, 619 F. App'x 136, 140 (3d Cir. 2015) (in a "complex" case, one meeting the week of trial was sufficient to remove the issue from the *Cronic* presumption); *State v. Miller*, 216 N.J. 40, 62 (2013) (affirming a conviction after defendant only had one brief meeting with counsel); *Parker v. Booker*, 2011 WL 5984035, at *15 (E.D. Mich. Nov. 30, 2011), *aff'd Parker v. Burt*, 595 F. App'x 595 (6th Cir. 2015) (finding one brief discussion with counsel was enough to remove the case from *Cronic* grounds); *see also Morris v. Slappy*, 461 U.S. 1, 14 (1983) (rejecting the argument that the Sixth Amendment "guarantees a meaningful relationship between an accused and his counsel").

defendant should not have to point to any specific event of prejudice and disprove the State's contention that trial counsel was able to "wing it" enough at trial to satisfy the Sixth Amendment. As the Supreme Court said in *Cronic*, some situations "ma[k]e it so unlikely that any lawyer could provide effective assistance that ineffectiveness [i]s properly presumed without inquiry into actual performance at trial."[77]

Even if specific prejudice need be shown, under a *Strickland* analysis trial counsel's pretrial ineffectiveness prejudiced Urquhart in plea negotiations. Postconviction counsel did not argue prejudice, complicating our review of a *Strickland* claim. It would have been preferable for postconviction counsel to make a fully briefed *Strickland* claim as an alternative to *Cronic*. But, the State has consistently maintained that *Strickland*, not *Cronic*, applies to this appeal, and that Urquhart has not demonstrated prejudice. Because the prejudice is manifest from the record, in the interest of justice, we will consider prejudice under *Strickland*.[78]

The reasonable probability standard under *Strickland* asks whether there is "a probability sufficient to undermine confidence in the outcome."[79] In the context of

---

[77] *Cronic*, 466 U.S. at 661 (discussing *Powell*, 287 U.S. 45, where defense counsel was appointed the day of trial in a capital murder case).

[78] Sup. Ct. R. 8 (questions may be considered and determined "when the interests of justice so require"); *N. River Ins. v. Mine Safety Appliances Co.,* 105 A.3d 369, 382-83 (Del. 2014) (rejecting a Rule 8 argument when the "broader issue" was raised below).

[79] *Strickland*, 466 U.S. at 694. *See also Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) ("*Strickland* asks whether it is 'reasonably likely' the result would have been different. This does

a plea offer, *Strickland* requires a reasonable probability that "that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."[80] A fair trial does not "wipe[] clean any deficient performance by defense counsel during plea bargaining."[81]

Here, we think it is obvious that had the objective circumstances—the evidence the State was going to present, the length of time Urquhart faced if he went to trial and was convicted, and the likelihood of an acquittal—been the subject of professionally adequate consultation between client and counsel, there is a "reasonable probability" that Urquhart would have accepted the plea. That is all *Strickland* requires.[82]

Trial counsel in a criminal case must discuss with his client the possibility of a plea instead of going to trial, especially if the State has offered to resolve the case for a sentence significantly shorter than the defendant could face if convicted at

---

not require a showing that counsel's actions 'more likely than not altered the outcome.'") (quoting *Strickland*, 466 U.S. at 693, 697).

[80] *Burns v. State*, 76 A.3d 780, 785 (Del. 2013) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

[81] *Lafler*, 566 U.S. at 169.

[82] *Strickland*, 466 U.S. at 694 (holding that, under *Strickland*'s prejudice prong, all that the defendant must show is "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

trial.[83]   Plea discussions are sensitive, and for counsel to be effective in a case like this, counsel must build trust between attorney and client through pretrial contact, a review of the strengths and weaknesses of the State's case, and a frank discussion about the defendant's chances of an acquittal after trial.[84]   None of that happened here before the day of trial.[85]   No groundwork was laid, no trust was built up, and there was no review of the State's evidence against him.  Whether in a fit of pique about his attorney's performance, a state of confusion, or because he was "seeing things for the first time," "getting things late," and "needing help," Urquhart turned down a plea offer of ten years less than offered at the final case review.  Had trial counsel performed his pretrial responsibilities, communicated with Urquhart, and had counsel had a rational conversation with him outside the distractions of the morning of trial, we think under *Strickland* there is a reasonable probability that "the result would have been different."

---

[83] Nat'l Legal Aid and Def. Ass'n., *Performance Guidelines for Criminal Defense Representation,* § 6.1, 6.3 (2006) (suggesting counsel should fully explore and explain options to defendant during plea negotiations and explain the advantages and disadvantages of an offer); *see also ABA Standards for Criminal Justice: The Defense Function*, Standard 4-5.1 (4th ed. 2015) (suggesting counsel should promptly communicate any plea offer and all associated risks, hazards, or prospects).

[84] *See Brooks*, 576 Pa. at 337–38 (2003) ("Without such a [in person] meeting, there is little to no hope that the client will develop a fundamental base of communication with his attorney, such that the client will freely share important information and work comfortably with the lawyer in developing a defense plan. Moreover, only a face-to-face meeting allows an attorney to assess the client's demeanor, credibility, and the overall impression he might have on a jury.").

[85] In trial counsel's affidavit, he states that the morning of trial Urquhart agreed not to call any witnesses.  App. to Opening Br. at A82–A83 (Trial Counsel Aff., 2–3).  We are, however, skeptical of after-the-fact rationalizations for not calling witnesses when the alternative would prove difficult if not impossible—getting witnesses to appear with no notice and no subpoena.

**IV.**

The parties have framed this dispute as a choice between two United States Supreme Court cases—*Cronic* or *Strickland*. This appeal, however, has elements of both cases. Under *Cronic*, its "presumption of prejudice is the fundamental idea that a defendant must have the actual assistance of counsel at every critical stage of a criminal proceeding for the court's reliance on the fairness of that proceeding to be justified."[86] Trial counsel was absent for the critical pretrial stage of Urquhart's prosecution. Under *Strickland*, "prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence."[87] Urquhart could not make informed decisions about the new plea offer.

Not all plea decisions, including decisions to enter a plea on the morning of trial, are subject to challenge for ineffective assistance of counsel. Obviously, there are material differences between a case when a defendant faces a modest sentence and the facts and law are not complex, and this case. In the former, defendant and counsel can often come to a reasoned decision in a compact time frame. But where, as here, the defendant faces serious charges and the possibility of generations of prison time, the need for a correspondingly serious effort to counsel the client must

---

[86] *Burdine v. Johnson*, 262 F.3d 336, 345 (5th Cir. 2001).
[87] *Lafler*, 566 U.S. at 168.

26

be recognized if *Strickland* is to have its intended protective effect. And where, as here, defense counsel has not engaged in a meaningful review of the evidence with the defendant, who in turn tells the court that he is confused and needs help, we are unwilling to ignore trial counsel's shortcomings by saying that trial counsel did competent work at trial with what he had. The Sixth Amendment requires more than the physical presence of counsel the first day of trial in a serious felony case with the possibility of a lengthy minimum mandatory incarceration.

The Superior Court's judgment is reversed, and the case remanded to the Superior Court. Although the defendant has asked for a new trial, we leave it to the Superior Court to decide whether a new trial should be ordered, or the State and the defendant agree on another remedy.[88] Jurisdiction is not retained.

---

[88] *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (when counsel is ineffective in plea negotiations the appropriate remedy "is to order the State to reoffer the plea agreement.").

**VAUGHN**, Justice, dissenting:

The Majority finds that the Public Defender's Office was ineffective in its representation of Urquhart under both *United States v. Cronic*[1] and *Strickland v. Washington*.[2] I disagree.

For claims of ineffective assistance of counsel under *Cronic*, prejudice need not be shown and is presumed in three specific situations.[3] First and "[m]ost obvious" is the "complete denial of counsel"—that is, where the accused is denied counsel at a "critical stage" of trial.[4] A "critical stage," according to the Supreme Court, is "a step of a criminal proceeding, such as arraignment, that [has] significant consequences for the accused."[5] Prejudice is also presumed "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[6] Finally, "in cases like *Powell v. Alabama*, where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected."[7]

Urquhart relies upon the first situation—complete denial of counsel. I would find that he was not completely denied counsel at any critical stage of the proceeding.

---

[1] 466 U.S. 648 (1984).
[2] 466 U.S. 668 (1984).
[3] *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (listing the three situations that *Cronic* recognized as involving circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" (quoting *Cronic*, 466 U.S. at 658-59)).
[4] *Cronic*, 466 U.S. at 659.
[5] *Bell*, 535 U.S. at 696.
[6] *Cronic*, 466 U.S. at 659.
[7] *Bell*, 535 U.S. at 696 (citing *Powell*, 287 U.S. 45, 53 (1932)).

Urquhart was represented by the Public Defender's Office continuously from his preliminary hearing to the completion of his direct appeal. An attorney from that office appeared with Urquhart at every court proceeding, including his three-day trial in the Superior Court. According to assigned trial counsel's affidavit, trial counsel met with Urquhart on August 14, 2014. In September 2014, trial counsel sent Urquhart the State's initial discovery response. On January 21, 2015, trial counsel obtained supplemental discovery from the State and on January 28, 2015, shortly prior to trial, sent it to Urquhart. As it developed, the supplemental discovery apparently did not reach Urquhart at the prison before the February 3 trial date. On the morning of trial, trial counsel discussed the case with Urquhart. In his affidavit, trial counsel described his discussion of the case with Urquhart:

> On the day of trial, client confirmed what he had told trial counsel at a previous discussion: client did not have any witnesses or alibi witnesses for his case. Prior to the start of Trial[,] counsel reviewed the evidence and determined what evidence was objectionable or unauthenticated, as well as what evidence was admissible. A review of the evidence was that there was no evidence placing my client in the getaway car. Client was correctly confident that no one would identify him as "E."
>
> . . . .
>
> Trial counsel was aware of Nyla Miller as a potential witness. Trial counsel and client were also aware of the fact that no witness would identify him as the getaway driver or an operator of the car, and that Nyla Miller was absent from the Court. Prior to starting the trial, trial counsel and client discussed the facts concerning Nyla Miller, and agreed not to call her as a witness. We

2

concluded that there was no tactical advantage to calling a witness who could not provide an alibi, and who could provide detrimental and incriminating evidence. Trial counsel decided not to attempt to secure her appearance for the second day of trial.

. . . .

Trial counsel was aware of the fact that there was a witness who identified a black jacket worn by the perpetrator. Trial counsel made a professional decision not to pursue this witness. Prior to trial, trial counsel discussed with client the fact that the "backhoe operator" could not and did not identify the perpetrator. Trial counsel, with client consent, wanted to focus on the fact that the client had a large and distinguishable tattoo that was not visible on the store's video tape. Trial counsel had the video stilled, enlarged and presented as evidence.[8]

Trial counsel developed a strategy for trial and also discussed the State's morning-of-trial plea offer with Urquhart.

Because *Cronic* requires a complete denial of counsel at a critical stage of the proceeding, it is "very narrow" in scope and the burden of showing that it applies is "very heavy."[9] I think the activities of the Public Defender's Office, including assigned trial counsel, set forth above, are sufficient to establish that Urquhart was

---

[8] App. to Appellant's Opening Br. at A82-83.

[9] *United States v. Roy*, 855 F.3d 1133, 1144, 1144-45 (11th Cir. 2017) (*en banc*) (noting that "the Supreme Court has repeatedly refused to find [*Cronic*] applicable" and "[o]nly once in the 30 years since the *Cronic* decision was issued has the Supreme Court applied *Cronic* to presume prejudice" (citing *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (applying the presumption of prejudice when the granting of an attorney's motion to withdraw had left the petitioner "entirely without the assistance of counsel on appeal"))), *cert. denied*, 138 S. Ct. 1279 (2018).

not "completely denied" counsel at a critical stage of the proceeding. I would reject his *Cronic* claim and find that he is not entitled to a presumption of prejudice.

I would find that Urquhart's claim is governed by *Strickland*.[10] The United States Supreme Court has stated that the difference between *Cronic* and *Strickland* "is not of degree but of kind."[11] They do not overlap. It is one or the other, but not both. Here, counsel can be criticized for not requesting a continuance, for not being more aggressive in obtaining the photos and surveillance footage earlier, for not investigating the case more thoroughly, for not meeting with Urquhart before the day of trial as the trial date approached, and perhaps for other things, but these are all *Strickland* issues.

Under *Strickland*, "[i]t is not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding."[12] The movant "must make specific allegations of actual prejudice and substantiate them";[13] these allegations must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[14] "A reasonable probability is a probability sufficient to undermine confidence in the

---

[10] 466 U.S. 668.
[11] *Bell*, 535 U.S. at 697.
[12] 466 U.S. at 693.
[13] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998) (*en banc*) (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del.) (*en banc*), *cert. denied*, 517 U.S. 1249 (1996)).
[14] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).

4

outcome."[15] "[I]t requires more than a showing of a theoretical possibility that the outcome was affected."[16] In sum, the defendant must prove actual prejudice.[17]

The problem is that Urquhart has not presented a *Strickland* claim in this appeal and has not claimed that trial counsel's conduct caused him any specific, actual prejudice. The Majority thinks that if trial counsel had done more pretrial preparation and discussed the case more fully with Urquhart before the morning of trial, there is a reasonable probability that the result would have been different; that is, Urquhart probably would have accepted the State's plea offer.

The record suggests otherwise. Urquhart's first case review was held on October 20, 2014. At that case review, no plea offer was made. His final case review was held on January 26, 2015, in the week preceding trial. At that time, the State made an offer with a fifteen-year minimum at Level V. Urquhart rejected that offer. On the morning of trial, the State made a revised plea offer of five years at Level V. Urquhart rejected that plea offer, stating to trial counsel, "I rather do 95 years then [sic] take a plea to 5, [i]t all the same to me."[18]

---

[15] *Strickland*, 466 U.S. at 694.

[16] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993); *see also Strickland*, 466 U.S. at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.").

[17] *Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

[18] App. to Appellant's Opening Br. at A82.

Urquhart's only opportunity to take the five-year plea offer was on the morning of trial. Whether Urquhart would have accepted the offer that morning if his trial counsel had done more preparation or spoken more with him before the day of trial is speculative. Urquhart has never even claimed that if trial counsel's representation had been different, he probably would have accepted the plea offer made to him the morning of trial. The idea that he would have accepted the plea offer if things had happened differently is not supported by the record. It is the kind of hypothetical, theoretical prejudice that the *Strickland* standard specifically rejects.[19]

I would affirm the judgment of the Superior Court.

---

[19] *See, e.g.*, *Frey*, 974 F.2d at 351 ("[A]lthough it is theoretically possible that, if [the defendant] had proper assistance of counsel, the jury would have sentenced him to life imprisonment, that outcome was not 'reasonably probable.'").