# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID #: 2005008448 |
| | ) | |
| ALLEN H. REESE | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 27, 2024
Decided: December 20, 2024

## MEMORANDUM OPINION

*Upon Consideration of the Defendants' Motion for Postconviction Relief,*
DENIED,

*Defendant's Second Motion for Appointment of Counsel,*
DENIED,

*Defendant's Motion to Grant Discovery,*
DENIED,

*Defendant's Motion to Lift Seal on Discovery,*
DENIED,

*and Defendant's "Prayer for Relief,"*
DENIED.

Casey L. Ewart, Esquire, Deputy Attorney General, Department of Justice, Georgetown, Delaware, *Attorney for the State of Delaware*.

Allen H. Reese, SBI #00858851, Sussex Correctional Institution, Georgetown, Delaware, *Defendant (pro se)*.

Michael Abram, Esquire, *Attorney of Record*, Georgetown, Delaware.

**Robinson, J.**

## I.    INTRODUCTION

On July 23, 2021, Allen H. Reese ("Reese") pleaded guilty to two counts of sexual abuse of a child by a person in a position of trust.[1] Reese's plea followed a multi-state investigation into his contacts with a minor whom he counseled through Delaware Guidance Services. Reese now moves for postconviction relief under Superior Court Criminal Rule 61 requesting that this court either: (1) vacate his convictions; (2) dismiss all criminal charges against him; (3) schedule a trial; or (4) schedule an evidentiary hearing. At Reese's request, the court appointed postconviction counsel in this matter. Postconviction counsel later filed a motion to withdraw and a memorandum in support of his motion, which this court granted. Reese's Rule 61 motion is accompanied by a motion for discovery, a motion to appoint counsel, a motion to lift seal on certain discovery, and a "prayer for relief."[2] Since his initial Rule 61 filing, Reese has modified and supplemented his postconviction claims through an array of amendments and related filings.[3] All claims or arguments not addressed in this opinion are summarily dismissed pursuant to Rule 61(d)(5).[4] Reese largely contends that he received ineffective assistance of

---

[1] D.I. 14, Case Review Plea Hearing; Sentence Order.

[2] D.I. 70; D.I. 72; D.I. 87; D.I. 48.

[3] D.I. 30; D.I. 40; D.I. 43; D.I. 48; D.I. 68; D.I. 70; D.I. 71; D.I. 72; D.I. 74; D.I. 75; D.I. 77; D.I. 79; D.I. 87; D.I. 97.

[4] Super. Ct. Crim. R. 61(d)(5) ("If it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified."); Reese has filed

counsel and that his plea was rendered involuntary as a result. Reese fails to demonstrate that he is entitled to relief and his Rule 61 motion is therefore **DENIED**. His remaining motions arise out of and are pursuant to the Rule 61 claim. Those four motions are likewise **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2019, Maryland police arrested Reese for sexual abuse of a child and related offenses.[5] Reese served as a guidance counselor for Delaware Guidance Services and was alleged to have sexually assaulted a fifteen-year-old child whom he counseled.[6]

A Maryland grand jury indicted Reese on January 28, 2020.[7] On June 23, 2021, a Delaware grand jury indicted him for sexual abuse of a child by a person in a position of trust first degree, sexual abuse of a child by a person in a position of trust second degree, and endangering the welfare of a child.[8] Both indictments related to the alleged sexual abuse of the same child. Reese's attorney ("Counsel") entered his appearance in the Delaware case on July 20, 2020.[9] Reese also acquired counsel in Maryland ("Maryland Counsel"). While Reese was being held in

---

more than five hundred pages of postconviction arguments, many of which are so unsubstantiated by facts or law that they need not be addressed here.
[5] D.I. 53, Mot. to Withdraw at 2.
[6] D.I. 37, State's Resp. in Opp. to Def.'s Mot. for Postconviction Relief ("State's Response") at 1.
[7] *Id.*
[8] *Id.* at 2; D.I. 2, Indictment.
[9] D.I. 7.

Maryland, Counsel and Maryland Counsel negotiated a global plea that would resolve his cases in both states. Because the Delaware case had not yet been opened, Reese and his attorneys relied on Maryland discovery during negotiations.[10] At an office conference on July 9, 2021, Counsel explained to the court that Reese's Maryland case was placed on a "stet docket"—meaning that his case was temporarily suspended—so that Reese could be extradited to Delaware for the sole purpose of entering his Delaware plea.[11] Counsel further explained that Reese would then be returned to Maryland where his case would be removed from the stet docket and reactivated.[12] Because Reese was a Delaware resident, the parties intended the Maryland sentence to run concurrently with the sentence Reese is serving in Delaware. Therefore, the Maryland plea and sentencing was contingent on Reese's acceptance of the Delaware plea and sentence.[13]

Reese was arraigned in Delaware on July 20, 2021.[14] Three days later, he pleaded guilty to two counts of sexual abuse of a child by a person in a position of trust.[15] At the plea hearing, Counsel explained that he reviewed the Truth-In-Sentencing Form ("TIS Form") with Reese and informed him of the trial rights he

---

[10] D.I. 32, Aff. in Resp. to Mot. for Post-Conviction Relief ("Counsel's Response") at 2.
[11] D.I. 10 at 2. See D.I. 54, App. to Mem. in Supp. of Mot. to Withdraw ("App. to Mot. to Withdraw") at A10, for Office Conference Transcript ("Office Conference Tr.").
[12] Id. at A12.
[13] Id. at A234; D.I. 15, Tr. of Proceedings on Friday, July 23, 2021 ("Plea Tr.") at 3. See App. to Mot. to Withdraw at A212, for Plea Transcript ("Plea Tr.").
[14] D.I. 11.
[15] D.I. 14.

would be giving up, as well as the recommended sentence, the minimum mandatory sentence, and the procedures underlying the interstate plea agreement.[16] Reese was aware that his Maryland case was put on the stet docket so that he could enter his Delaware plea and be transferred back to Maryland where his case would be reactivated.[17] The court conducted an extensive plea colloquy in which Reese confirmed the following: he understood everything Counsel had said; it was accurate; he had ample time to discuss the plea agreement with Counsel; he knew that there was very little chance to retract the plea; he had adequate time to discuss the evidence and his options; he was satisfied with Counsel's representation; Counsel had done "everything he possibly [could]" on his behalf; he freely and voluntarily decided to plead guilty; no one threatened or forced him to enter the plea; he knew he was giving up his trial rights; and he did in fact commit the two offenses listed in the plea.[18] When asked, "Is there anything that's holding you back or anything that you have questions about?" Reese asked if his total time would equal thirteen years and if it would be possible to receive credit for time spent in jail. The court answered both questions affirmatively.[19] Reese was sentenced to thirteen years of unsuspended Level V time, in accordance with the plea agreement.[20]

---

[16] Plea Tr. at 2.
[17] *Id*. at 3.
[18] *Id*. at 6-13.
[19] *Id*. at 17-18.
[20] D.I. 14.

On July 18, 2022, Reese moved for postconviction relief and appointment of counsel.[21] After receiving an amended motion for postconviction from Reese, and affidavits from Counsel and the State, this court appointed postconviction counsel on February 1, 2023.[22] Postconviction counsel moved to withdraw on June 26, 2023 after concluding that he could not "ethically advocate for the claim presented, or any other claim."[23] This court granted counsel's request to withdraw on September 26, 2023. Reese has since filed and withdrawn various motions, amendments, supplemental briefings, and responses in support of his Rule 61 motion. On September 26, 2024, he informed the court that he had settled on seven grounds for relief: his original three (i.e., ineffective assistance of counsel, invalid plea, and constructive denial of counsel), plus four new grounds (i.e., "perjury, fraud and conspiracy," "conflict of interest," "actual innocence and impossibility defense," and "*Brady* violations and concurrent prosecutorial misconduct"), that he raised after the State and Counsel filed their responses.[24] At Reese's request, this court has considered all arguments contained in his November 14, 2023 and September 26, 2024 Rule 61 briefings, as well as those in his outstanding motions and responses to the State, Counsel, and postconviction counsel.

---

[21] D.I. 25.

[22] D.I. 50.

[23] D.I. 64; D.I. 53, Mot. to Withdraw as Couns. at 22.

[24] D.I. 97, Mem. to Suppl. Pet'r's Am. Mot. ("Reese's Supplemental Memorandum") at 1 ("Between the 11/14/2023 filing and that made today there are a total of seven grounds.").

## III.   STANDARD OF REVIEW

Superior Court Criminal Rule 61 permits defendants to seek to set aside a judgment of conviction on any ground that is "a sufficient factual and legal basis for a collateral attack upon a criminal conviction . . . ."[25] "If it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified."[26]

To bring a claim for ineffective assistance of counsel, a defendant must satisfy the two-pronged *Strickland* test: the defendant bears the burden of demonstrating (1) that trial counsel's performance was objectively unreasonable and (2) that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] There is no need for the court to address both components where a defendant makes an insufficient showing on one.[28]

A defendant must overcome a strong presumption that counsel conducted himself in a professionally reasonable manner.[29] Mere allegations of ineffectiveness are not enough.[30] Counsel "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote

---

[25] Super. Ct. Crim. R. 61 (a)(1).
[26] Super. Ct. Crim. R. 61 (d)(5).
[27] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[28] *Id*. at 697.
[29] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[30] *State v. Charriez*, 2020 WL 5814384, at *3 (Del. Super. Ct. Sept. 30, 2020).

possibilities."[31] The court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[32] Such an evaluation requires a strong presumption that counsel's conduct constituted sound trial strategy, and that a defendant make and substantiate concrete allegations to overcome this presumption.[33] Objectively unreasonable conduct exists only where "no reasonable lawyer would have conducted the defense as [counsel] did."[34] To satisfy the prejudice requirement, it is not enough to "show that the errors had some conceivable effect on the outcome of the proceeding . . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."[35]

When a defendant challenges a guilty plea, prejudice can only be shown where "there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."[36] "In the absence of clear and convincing evidence to the contrary, [a defendant] is bound by his answers on the [TIS Form] and by his sworn testimony prior to the acceptance of the

---

[31] *Harrington v. Richter*, 562 U.S. 86, 110 (2011).
[32] *Strickland*, 466 U.S. at 689.
[33] *Id.*; *see Salih v. State*, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008)
[34] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).
[35] *Strickland*, 466 U.S. at 693.
[36] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

guilty plea."[37] Those representations pose a "formidable barrier in any subsequent collateral proceedings."[38]

## IV.  DISCUSSION

Reese's first three claims assert that: (1) he received ineffective assistance of counsel; (2) his plea was invalid; and (3) he received a complete/constructive denial of counsel.[39] His remaining claims are summarily dismissed as they merely rehash those same arguments while accusing his attorney of conspiring with the State to have him incarcerated. During his guilty plea, Reese stated that he was satisfied with his attorney's representation. He has not shown that his plea was involuntary and none of his arguments overcome his statements in his plea colloquy. For these reasons, Reese has failed to demonstrate that he is entitled to postconviction relief.

### A.  GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

Reese first argues that the two-part *Strickland* test is satisfied and that he is therefore entitled to a new trial. He makes the following claims to show that the unreasonableness prong is satisfied: (1) Counsel lied about having reviewed discovery for the Maryland case; (2) Counsel did not meet with him between September, 2020 and July, 2021; (3) Counsel failed to hire a psychiatric expert and a DNA expert; and (4) Counsel failed to pursue a defense based on evidence of the

---

[37] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[38] *Id.* (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).
[39] D.I. 69, Mem. in Supp. of Am. Pet. for Postconviction Relief ("Reese's First Amended Memorandum") at 31, 59, 89.

victim's bad character. As for the prejudice prong, Reese argues that he was prejudiced by claim one because he never would have pleaded guilty if he were aware of the contents of the allegedly overlooked Maryland discovery. Reese never directly states how he was prejudiced by claim two. In support of claims three and four, Reese only suggests that his rejected defense strategies would have been effective. Each claim fails to overcome the *Strickland* standard for the following reasons.

### i. Counsel was not Ineffective for Failing to Review Discovery

Reese has not demonstrated that Counsel failed to review discovery. On the contrary, Counsel confirmed that he made "a thorough review of the evidence and discussed the issues with [Reese]."[40] In response, Reese makes a myriad of claims accusing Counsel of lying to undermine his case—none of which are persuasive. He contends, for instance, that Counsel could not have reviewed Maryland discovery because, had he done so, he would have known to develop a defense based on slight differences in the minor victim's accounts of the assaults.[41] He makes a number of additional allegations that are similarly inferential and uncorroborated.[42] In his plea

---

[40] Counsel's Response at 2.

[41] *See, e.g.*, Reese's First Amended Memorandum at 46-47.

[42] *See, e.g.*, *id*. at 46 (". . . [Counsel] unwittingly confesses to the fact he did not review Maryland discovery[:] 'The Defendant claims that defense counsel failed to get alleged exculpatory evidence in this case, specifically disciplinary records, and medical records of the victim.' Had [Counsel] reviewed discovery in custody of Maryland Counsel he would've known the Delaware Guidance Services case notes, medication records, and psychiatric diagnoses were available through [Maryland Counsel's] office.") (citing Counsel's Response).

colloquy, Reese stated that he was satisfied with Counsel's representation and he admitted to committing the two offenses brought against him.[43] His allegations do not show by clear and convincing evidence that the statements in his plea colloquy and TIS Form were inaccurate.

Reese would not be entitled to relief even if he demonstrated that Counsel failed to review discovery because has not shown prejudice. He argues that he suffered prejudice because he was denied access to exculpatory evidence. The evidence he points to is impeachment evidence, however, and therefore not likely exculpatory.[44] Specifically, he cites the victim's medical/mental health history, GPS reports, and interviews with the victim as being exculpatory. Reese believes that this evidence clearly demonstrates that the then-fifteen-year-old victim lied about being sexually assaulted because the victim stated that Reese used "back roads" to drive him to the location of the assault, when, in reality, they travelled down Route 13, a four-lane highway.[45] Counsel explained in his response that he did not believe that

---

[43] Plea Tr. at 8, 13.

[44] *McGuiness v. State*, 312 A.3d 1156, 1182 (Del. 2024) ("Evidence is exculpatory if it is 'material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'") (citation omitted); *Smith v. Cain*, 565 U.S. 73, 76 (2012) ("We have observed that evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict.").

[45] *See, e.g.*, Reese's First Amended Memorandum at 58 ("The accuser stated that when he and Petitioner left the Golden Eagle Diner they used backroads to drive to the location of the alleged assault. . . . No credible individual could possibly characterize Route 13 in Sussex County as a back road.").

11

this evidence would support Reese's theory of the case at trial.[46] Further, Reese served as the victim's counselor, so he was well aware that the victim had mental health and behavioral issues. He has therefore failed to show by clear and convincing evidence that he never would have pleaded guilty to sexual assault if he were aware of the victim's medical/mental health issues. Finally, Reese's theories regarding the GPS reports and interviews are simply too tenuous to overcome the clear and convincing evidence standard. Counsel already explained that he was not persuaded by Reese's overarching story. Reese's new theories do not corroborate his story in any meaningful way. Even if Counsel failed to review the GPS reports and interviews, this court is not persuaded that he would have advised Reese differently had he seen them (and that Reese would have consequently gone to trial) because Counsel clearly stated that he thought Reese's theory of how Reese's DNA was found on the victim's genitals was "preposterous."[47] Reese therefore fails to show that Counsel was unreasonable or that he was prejudiced by Counsel's alleged unreasonableness.

### ii. *Counsel was not Ineffective for Failing to Meet with Reese*

Reese claims that Counsel was ineffective for failing to meet with him from September, 2020 to July, 2021. In support of this argument he cites *Urquhart v.*

---

[46] D.I. 36, Aff. in Response to Am. Mot. for Postconviction Relief Claim #6 ("Counsel's Response to Claim #6") at 2.
[47] Counsel's Response at 7.

*State*, in which the Supreme Court of Delaware found that a defense attorney was ineffective for failing to meet with his client during the four months leading up to trial while also failing to discuss a plea with him until the morning of trial.[48] Unlike Urquhart, Reese was aware of and agreed to his plea agreement long before the entry of his plea, and certainly long before any trial. Before jury selection, Urquhart told the judge that he was confused and needed help understanding "what's going on."[49] Reese expressed no such confusion at the plea colloquy and he had met extensively with Maryland Counsel prior to reaching the plea agreement. Because Reese was timely presented with a reasonable plea agreement—which he understood and accepted—his case is distinguishable from *Urquhart*. Reese's second claim of ineffectiveness therefore fails to satisfy the unreasonableness prong of *Strickland*.

### iii. Counsel was not Ineffective for Failing to Consult with Experts

Reese's third claim involves Counsel's alleged failure to consult with psychiatric and DNA experts. It should be noted that Reese took advantage of a global plea that bypassed typical pretrial procedures such as discovery requests and the hiring of expert witnesses.[50] He explicitly acknowledged in his plea colloquy that he was giving up the right to hear and question witnesses against him and to present

---

[48] *Urquhart v. State*, 203 A.3d 719, 734 (Del. 2019).
[49] *Id*. at 724.
[50] Plea Tr. at 2-3 ("I went over the trial rights he's giving up by entering his plea today, and I do believe he understands them.").

13

evidence in his defense.[51] He further acknowledged that the decision to plead guilty was his alone and that he knew he could go against his attorney's advice.[52] Reese cannot now assert that Counsel was ineffective for advising him to accept a plea instead of pursuing his theory of the case through various experts. Furthermore, Counsel explained that he saw no reason to consult with these experts because Reese's theory of the case involved accusing the victim of forcing Reese to spit in the victim's hand, then rubbing that hand on the victim's own genitals, thereby conceding that Reese's DNA was legitimately found on the victim's body.[53] Regardless, Reese was not prejudiced by Counsel's decision because he abandoned that theory when he pleaded guilty and voluntarily waived his right to present evidence in his defense.[54]

     *iv.    Counsel was not Ineffective for Failing to Pursue a Defense Based on Certain Character Evidence*

Finally, Reese argues that Counsel was ineffective for failing to pursue a defense based solely on the victim's character for truthfulness. Reese admits in his briefing that he asked Counsel to prepare this defense *before* he entered his plea.[55]

---

[51] *Id*. at 10.

[52] *Id*. at 9.

[53] Counsel's Response at 4.

[54] Plea Tr. at 10.

[55] Reese's First Amended Memorandum at 51 ("Petitioner emphasized to [Counsel] his belief that in front of a jury this case would rest on character integrity . . . . Therefore, it would be essential to investigate each individual's reputation for truthfulness and integrity, and to superimpose their reputations on the stories they each shared on the events on 11/27/2019.").

Accordingly, he was aware of the possibility of pursuing such a defense when he pleaded guilty. Reese's argument is undermined by his statements in his plea colloquy, namely his acknowledgment that he would be waiving his right to examine witnesses and present evidence in his defense by pleading guilty.[56] Reese was not prejudiced because he was aware of this defense when he voluntarily waived his right to defend himself at trial.

## B.    GROUND TWO: INVALID PLEA

Reese's second ground for relief essentially reargues that the *Strickland* standard is met. He asserts that his plea was entered involuntarily because of his attorney's misconduct. In other words, he once again argues that he would not have pleaded guilty but for Counsel's ineffectiveness. Reese makes three new claims of ineffectiveness:[57] (1) Counsel negotiated the global plea at an office conference without his consent; (2) Counsel coerced him into pleading guilty by telling him that he would be an "excellent" candidate for a commutation; and (3) Counsel ignored contacts from Reese and his family members in the few days after Reese signed the plea agreement but before the plea colloquy because he knew that Reese wanted to withdraw his plea and go to trial. Reese also claims that various emails sent by Counsel during plea negotiations prove that Counsel conspired against him with the

---

[56] Plea Tr. at 10.
[57] Repetitive claims have been omitted.

State. Counsel's candor during negotiations was not unreasonable considering the apparent weight of the evidence against his client. All claims of ineffectiveness arising out of these emails are summarily dismissed.[58]

      *i.    Counsel Properly Informed the Court of Reese's Plea Agreement at the July 9, 2021 Office Conference*

Reese's first claim takes issue with the fact that Counsel informed the court of his plea agreement at an office conference on July 9, 2021. He claims that, at the time, "[t]here had never been a discussion between [Counsel] and [himself] about plea bargains."[59] Eleven days before the office conference, Counsel sent an email to the State in which he states, "my counterpart in Maryland spent 10 hours dealing with [Reese] on Friday at the jail. He got [Reese] back on board with a plea that will total 10 years in jail."[60] This email is attached as an exhibit to Reese's briefing.[61] Reese was clearly aware of the plea agreement at the time of the office conference. Knowing this, Counsel properly informed the court of the plea agreement. Reese's claim is misleading and does not show that he suffered prejudice as a result of Counsel's representations at the office conference.

---

[58] *See, e.g.*, Reese's First Amended Memorandum at 61 ("[Counsel] is in process of negotiating a plea agreement with [the State] and states: 'I know if it is a trial I will lose.' . . . [Counsel] continued: 'So I would love to wrap it up with a charge for however many years suspended after 10 years . . . I would like to strike quickly while [Maryland Counsel] has [Reese] in line. . . . If we can make this happen it would be great and we can put it to bed.'") (citing an email between Counsel and the State).

[59] *Id*. at 65.

[60] *Id*., Exhibit E.

[61] *Id*.

ii.  *Counsel Did Not Coerce Reese Into Pleading Guilty by Advising Him About the Possibility of a Commutation*

Reese claims that he was coerced into pleading guilty because Counsel told him that he would be an "excellent" candidate for a commutation.[62] He points to an email sent during plea negotiations between Maryland Counsel and the Maryland prosecutor in which Maryland Counsel questions the likelihood of Reese receiving a commutation. Reese has not satisfied the *Strickland* standard because the email from Maryland Counsel does not demonstrate that Counsel was unreasonable and he has not otherwise shown prejudice. Reese is correct that Maryland Counsel expressed serious skepticism about the likelihood of a commutation, but he ignores Maryland Counsel's statement that "no one knows if [Reese] would qualify to have part of his sentence in DE commuted."[63] Further, Maryland Counsel's statements receive reduced weight in the *Strickland*-reasonableness calculation because the statements were made in an attempt to negotiate a plea and because Maryland Counsel pointed out that he was unfamiliar with Delaware's sentencing processes.[64] Either way, it appears that Counsel merely advised Reese about the commutation process after consulting with a senior counselor at SCI.[65] Reese acknowledged in his

---

[62] *Id*. at 76.

[63] *Id*., Exhibit L.

[64] *See, e.g.*, *id*. ("My concern is that my calculation may not have been accurate as I do not practice in DE and am not familiar with their 'good time' credits.").

[65] Counsel's Response at 10-11 ("[Reese] wanted to know of any other possible options regarding a lower sentence, to which [Counsel] advised him of the process of a commutation. [Reese] claimed to know lots of people in government and believed he could make it happen at some point

plea colloquy that Counsel never promised him anything.[66] He has not overcome his own admissions from the plea colloquy with clear and convincing evidence to the contrary, nor has he shown that Counsel's advice was unreasonable. Reese's second claim therefore fails satisfy either prong of the *Strickland* test.

       iii.     *Reese's Plea is not Invalidated by his Alleged Inability to Contact Counsel after Signing the Plea Agreement*

Reese claims that Counsel ignored his attempted contacts after he signed his plea paperwork. Reese argues that he was prejudiced by this lack of contact because he was attempting to withdraw from the plea agreement and was unable to do so. Once again, his claims are contradicted by his statements in his plea colloquy. Reese informed the court that he understood that he was giving up his trial rights and he admitted to committing both offenses.[67] He was told that "there is very little chance for a do-over" and that he could not revisit his case if he later regretted his decision.[68] The plea colloquy occurred after Reese alleges to have attempted to contact his attorney to withdraw from the agreement. If he truly had reservations about his plea, he should have raised them—and he had the opportunity to do so—at the plea hearing. Without more, this court cannot revisit a plea simply because a defendant claims to have had doubts about entering it.

---

in the future. [Counsel] spoke to a senior counselor at SCI to discuss the likelihood of it occurring and how long he should wait to attempt this. This information was relayed to [Reese].").

[66] Plea Tr. at 8.

[67] *Id*. at 9, 13.

[68] *Id*. at 6-7.

## C. GROUND THREE: CONSTRUCTIVE DENIAL OF COUNSEL

Reese's third ground for postconviction relief points to *U.S. v. Cronic*, in which the Court held that prejudice may be presumed where there is a complete denial of counsel at a critical stage of the criminal process.[69] The *Cronic* Court noted that certain circumstances "[make] it so unlikely that any lawyer could provide effective assistance that ineffectiveness [is] properly presumed without inquiry into actual performance at trial."[70] Reese argues that Counsel's failure to request reduced bail at his arraignment amounted to such circumstances. He claims to have told Counsel that he wanted to plead innocent immediately before the arraignment. This point is moot, however, because Reese was transferred to Delaware for the sole purpose of entering his plea and returning to Maryland to finalize the global plea.[71] Upon arriving in Delaware, Reese had already negotiated and agreed to the multistate plea, in part so that he could expedite both states' pretrial processes. Reese's acceptance of the Delaware plea was a condition of the global agreement.[72] Counsel's decision to disregard the State's routine bail request was consistent with

---

[69] *United States v. Cronic*, 466 U.S. 648, 659 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.").

[70] *Id.* at 661; *see also State v. Lambert*, 278 A.3d 71, 75 (Del. Super. Ct. 2022) (extending the *Cronic* exception to the pretrial stage of the criminal process).

[71] Counsel's Response at 12.

[72] App. to Mot. to Withdraw at A234.

this agreement and did not amount to a "complete denial" of counsel. For the same reason, Counsel's decision would be considered reasonable under the *Strickland* test. Reese has not shown that Counsel acted unreasonably, nor has he shown that prejudice is presumed under *Cronic*. Reese ultimately stated in his plea colloquy that he was satisfied with Counsel's representation and that he believed Counsel did everything he possibly could on his behalf; he cannot argue that he was completely denied counsel after making such a concession.[73]

## D. GROUNDS FOUR THROUGH SEVEN ARE SUMMARILY DISMISSED

Reese's supplemental brief adds four new grounds to be considered with the original three mentioned above. He categorizes grounds four through seven as follows: (4) "perjury, fraud and conspiracy"; (5) "conflict of interest"; (6) "actual innocence and impossibility defense"; and (7) "*Brady* violations and concurrent prosecutorial misconduct."[74] Each new claim is summarily dismissed pursuant to Rule 61(d)(5) as it "plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that [Reese] is not entitled to relief . . . ."

### i. *Ground Four: "Perjury, Fraud, and Conspiracy"*

Reese's fourth claim relies on the same series of emails and events referenced in his First Amended Memorandum. He primarily contends that the attorneys'

---

[73] Plea Tr. at 7-8.
[74] Reese's Supplemental Memorandum at 23, 49, 59, 95.

statements during plea negotiations amounted to a conspiracy against him, alleging that Counsel worked with prosecutors from both states "in a ploy to convince [him] to entertain a plea deal he clearly had been strongly opposing."[75] To the extent that Reese addresses Counsel's Response, he only repeats various arguments from his First Amended Memorandum or makes bare allegations of collusion.[76] The only new argument raised is a *Brady* claim, but Reese waived his right to make such a claim when he agreed to a global plea in Maryland before the Delaware discovery process could begin.[77] Counsel even stated that Reese "was advised that the discovery process [would] not begin until his case commenc[ed] in Delaware and since he was only coming to Delaware to enter a guilty plea, [Counsel] would only rely on the Maryland discovery . . . ." Reese cannot contest the discovery process after availing himself of the benefits of the expedited global plea. He also voluntarily waived his trial rights in his plea colloquy, including his right to present evidence in his defense.[78] Reese's fourth claim makes no genuine contributions to his previous

---

[75] *Id*. at 27.

[76] *See, e.g.*, *id*. at 32 ("[Counsel's] coordination [with the senior counselor at SCI] could not have been random and serves as evidence that counsels and prosecutors from both Maryland and Delaware were aware commutation was to be used as a dangling carrot to persuade [Reese] it made sense to avoid a de facto life sentence . . . .").

[77] *See Scarborough v. State*, 2015 WL 4606519, at *3 (Del. July 30, 2015) ("It is well-settled that a knowing and voluntary guilty plea waives a defendant's right to challenge any errors occurring before the entry of the plea, 'even those of constitutional dimensions.'"). It should also be noted that three days passed between Reese's arraignment and his plea hearing in Delaware. *See* D.I. 11, Rule 9 Warrant Returned & Arraigned in Superior Court (dated July 20, 2021); D.I. 14, Case Review Plea Hearing (dated July 23, 2021).

[78] Plea Tr. at 10.

arguments and is otherwise meritless.[79] Ground four is therefore summarily dismissed.

### ii. Ground Five: "Conflict of Interest"

Reese next argues that he was prejudiced by a conflict of interest. He contends that Counsel's plea negotiations and recommendation amounted to a breach of his duty of loyalty and that Counsel's personal interests contravened his own. Reese never points to a specific conflicting interest, however. Instead, he portrays his attorney's negotiations as being a conspiracy with the State.[80] Defense attorneys have a responsibility to relay plea negotiations to defendants and are free to recommend plea deals. A criminal defendant cannot unilaterally create a conflict of interest by disagreeing with an attorney's recommendation. Reese's remaining arguments do not demonstrate that Counsel's actions were unreasonable or malicious.[81] Counsel properly negotiated and recommended a plea agreement which Reese accepted. Reese's fifth claim is therefore summarily dismissed.

### iii. Ground Six: "Actual Innocence and Impossibility Defense"

---

[79] The remainder of Reese's fourth claim accuses Counsel of committing various forms of fraud and perjury, largely relying on civil case law. These arguments are summarily dismissed.

[80] Reese's Supplemental Memorandum at 55 ("Mr. Abram in his 7/20/2021 email speaks to a *deal* he had with five people concerning petitioner's global plea . . . . [w]hile Mr. Abram has yet to reveal the names of his partners, it would defy logic to believe [the prosecutor] was not among them.") (citations omitted).

[81] The remainder of Reese's fifth claim repeats his theories about how Counsel conspired against him and how he was prejudiced by Counsel's failure to respond to certain letters/phone calls. Both arguments are summarily dismissed because they have already been addressed and are herein meritless because they are unrelated to Reese's conflict of interest argument.

Reese attempts to retroactively litigate his case in his sixth ground for relief. He claims to have an impossibility defense and believes that it is supported by new evidence. He only points to evidence that was available through the discovery process when he pleaded guilty (i.e., the GPS reports and victim interviews). The evidence is not newly discovered, nor does it prove that Reese is innocent of the two offenses. Any further analysis is unnecessary because Reese admitted to committing both offenses in his plea colloquy.[82] He has not shown that his statements were invalid or that the plea was entered involuntarily. Reese's sixth ground for relief is therefore summarily dismissed.[83]

    iv.    *Ground Seven: "*Brady *Violations and Concurrent Prosecutorial Misconduct"*

Reese's final ground for relief is a repetitive *Brady* claim. He argues that he was not aware of the extent of the character evidence that he could have brought against the victim. He claims that certain impeachment evidence would have left the victim with "no credibility."[84] There is again no need to analyze this claim, because Reese admitted to committing the two offenses in his plea colloquy and has not shown that the plea was entered involuntarily.[85] Reese chose to resolve his cases in

---

[82] Plea Tr. at 13.

[83] Reese includes a *Brady* argument in ground six. That argument essentially summarizes his seventh ground for relief and is addressed below. His sixth ground for relief is otherwise summarily dismissed.

[84] Reese's Supplemental Memorandum at 92.

[85] Plea Tr. at 13.

both states with an expedited global plea. He cannot claim in good faith that he was prejudiced by the absence of certain Delaware discovery after intentionally bypassing the Delaware discovery process and confessing to both offenses. Reese's seventh ground for relief is summarily dismissed.

## V.    CONCLUSION

Reese principally argues that he received ineffective assistance of counsel and that his plea was rendered invalid as a result. In doing so, Reese mischaracterizes the plea negotiation process as being a conspiracy against him and seeks to use Rule 61 as a means undoing his waiver of his trial rights. Reese was transported to Delaware for the sole purpose of pleading guilty where he ultimately accepted the terms of his plea and stated that he understood the complex circumstances under which it arose.[86] For those reasons, Reese's motion for postconviction relief is **DENIED**.

Reese also asks this court to consider four related outstanding motions.[87] Each of those motions seeks to enable him to further explore the above-mentioned claims. Reese's Motion to Grant Discovery, Second Motion for Appointment of Counsel, Motion to Lift Seal on Discovery, and "Prayer for Relief" are therefore **DENIED**.

---

[86] Plea Tr. at 6.

[87] D.I. 70, Mot. to Grant Discovery; D.I. 72, Mot. for Appointment of Counsel; D.I. 87, Mot. to Lift Seal on Discovery in Postconviction Case; D.I. 48, Prayer for Relief.